UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENT GRAHAM,<br>   Plaintiff,<br>  v.<br>STANDARD INSURANCE COMPANY,<br>   Defendant. | Case No. 16-cv-03407-JCS<br><br>**ORDER DENYING MOTION TO DISMISS**<br>Re: Dkt. No. 11 |

## I. INTRODUCTION

This breach of contract action involves a group life insurance policy ("Policy") issued by Defendant Standard Insurance Company ("Standard") that covered Plaintiff's wife, Normalee Tilman, when she was an employee of San Mateo County. Plaintiff Kent Graham was the beneficiary on the policy. After Mrs. Tilman contracted pancreatic cancer she was forced to retire. Ultimately, she died of pancreatic cancer. Although Mrs. Tilman apparently attempted to "port" her insurance, that is, convert her group life insurance into an individual life insurance policy when she retired, Standard denied her request for portability on the basis that Mrs. Tilman had failed to timely submit her portability paperwork. Plaintiff alleges, however, that Mrs. Tilman relied on her employer to submit the paperwork, consistent with Standard's portability procedures, and that she submitted the required paperwork within the required period. In the Complaint, Plaintiff asserts claims for breach of contract and breach of the covenant of good faith and fair dealing against Standard. The action was initially filed in the Superior Court of the County of San Francisco and was subsequently removed to federal court on the basis of diversity jurisdiction. See Docket No. 1.

Presently before the Court is Standard's Motion to Dismiss, or in the Alternative, Motion

1 for More Definite Statement ("Motion").  The Court finds that the Motion is suitable for

2 determination without oral argument and therefore vacates the hearing set for August 5, 2016 at

3 2:00 p.m.  For the reasons stated below, the Motion is DENIED.[1]

## II. BACKGROUND

### A. The Complaint

According to the Complaint, Plaintiff's deceased wife, Mrs. Tilman, was a former employee of the County of San Mateo Correctional Services Department and was insured under a group life insurance policy purchased through her employer and issued by Standard.  Complaint ¶ 6, 11.  All of her premiums on the Policy were paid by and through the County of San Mateo ("County").  *Id*. ¶ 7.  In addition, the Complaint alleges that "[u]nder the control and direction of Standard, the County administers the Policy."  *Id.*  ¶ 8.  Plaintiff was the beneficiary on the Policy.  *Id.* ¶ 9.

Plaintiff alleges that Mrs. Tilman was forced to retired from her job with the County when she was diagnosed with Stage Four Pancreatic Cancer and that she eventually died from that disease.  *Id.*  ¶¶ 11-12.  According to the Complaint, "[a]t all times relevant,  Mrs. Tilman  sought to protect her family, Plaintiff and her daughter, by continuing her life insurance benefits" and Standard was "on notice of Mrs. Tilman's terminal Pancreatic Cancer and her desire to maintain her life insurance policy with Standard."  *Id.*  ¶¶ 17-18.   The Complaint further alleges, "Mrs. Tilman elected to continue her life insurance policy coverage with Standard, consistent with the portability requirements in said life insurance policy.  *Id.*  Upon her retirement, Mrs. Tilman timely submitted all relevant paperwork regarding the portability of her life insurance coverage, to the County of San Mateo, for submission to Standard."  *Id.*  ¶ 18.  Mrs. Tilman allegedly delivered her portability paperwork to the County (rather than directly to Standard) because "[w]ith regard to Standard's portability practices, the County of San Mateo directed insureds to deliver claim-related and or portability-related paperwork to the County of San Mateo, as administrators, for submission to Standard."  *Id.*  ¶ 19.  Plaintiff further alleges that Mrs. Tilman "had no knowledge

---

[1] The parties have consent to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

or control over the County of San Mateo's actions in the administration of Standard's policies." *Id.* ¶ 21.

Although Mrs. Tilman "timely completed her Group Life Portability Insurance paperwork and timely delivered said forms to the County of San Mateo [ ] for submission to Standard," she subsequently discovered that "premiums for the continuation of her life insurance policy were not being taken out of her retirement check by the County of San Mateo, as they should have been under Standard's portability procedures." *Id.* ¶¶ 21-22. She then received another set of portability forms from the County. *Id.* ¶ 23. The County requested that Mrs. Tilman complete the forms and return them to the County, "as administrator for Standard." According to the Complaint, "[t]he County stated to Mrs Tilman that it would submit all the paperwork again to Standard" and told Mrs. Tilman that it would "explain to Standard that Mrs. Tilman had timely submitted all relevant portability forms." *Id.* ¶ 23. Mrs. Tilman completed the forms and returned them to the County for submission to Standard. *Id.* ¶ 24. Standard denied her request for portability, however, on the basis that she had not timely submitted her portability insurance paperwork. *Id.* ¶ 27. Plaintiff appealed the decision but Standard denied the appeal. *Id.* ¶ 30.

Based on these allegations, Plaintiff asserts claims for: 1) breach of contract; and 2) breach of the implied covenant of good faith and fair dealing.

### B.     The Policy[2]

The County is given responsibility for administering various aspects of the group life insurance Policy. *See*, e.g., Policy, "Life Insurance," Section C(2) (providing that decreases in insurance other than those resulting from a change in classification become effective "on the first day of the pay period following the date the Policyholder *or your Employer* receives your written request for the decrease"); "Benefit Payment and Beneficiary Provision," Section (B)(3) (providing that a beneficiary may be designated based on a writing delivered to "the Employer," or

---

[2] "A district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998), as amended (July 28, 1998) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994)). Defendant has submitted a copy of the Policy as an exhibit to its Motion and Plaintiff does not challenge its authenticity. Therefore, the Court may consider it here.

a verification of receipt of an electronic or telephonic designation by "the Employer"); "Policyholder Provisions," Section I ("[t]he Policyholder or Employer will furnish on our forms all information reasonably necessary to administer the Group Policy"). Nonetheless, the Policy expressly disavows any agency relationship between Standard and the employer, stating that "[i]ndividuals selected by the Policyholder or by an Employer to secure coverage under the Group Policy or to perform their administrative function under it, represent and act on behalf of the person selecting them, and do not represent or act on behalf of Standard Insurance Company." *Id.*, "Policyholder Provisions," Section J; *see also id.*, "Clerical Error and Misstatement," Section B ("[the Policyholder and your Employer act on their own behalf as your agent, and not as our agent").

The Policy provides that "Life Insurance ends automatically" no later "[t]he last day of the pay period in which [the Member's] employment terminates." *Id.*, "Life Insurance," Section G. However, Members whose employment terminates "may be eligible to purchase portable group insurance coverage" allowing the Member to purchase life insurance without "submitting Evidence of Insurability." *Id.*, "Portability of Insurance," Section A. To obtain such coverage, the Member must "apply in writing and pay the first premium directly to us at our Home Office within 31 days after the date your employment terminates." [3] *Id.*, Section A(4). The Portability of Insurance provision further provides that the portable insurance "become effective the day after [the Member's] employment with [her] Employer terminates, if [she applies] within 31 days after the date [her] employment terminates." *Id.*, Section C.

### C. The Motion

#### 1. Motion

In the Motion, Standard contends Plaintiff's breach of contract claim fails, as a matter of law, because the group Policy expired when Mrs. Tilman's employment terminated and the Complaint does not allege that Mrs. Tilman timely submitted her portability paperwork and

---

[3] Similarly, the Policy requires that premiums on the group policy must be paid "on or before" the due date "directly to [Standard] at our home office." Policy, "Policyholder Provisions," Section D (Payment of Premiums).

4

premium payment to Standard, as required under the Policy's Portability of Insurance" provision. Motion at 8. Thus, Standard contends, its denial of Mrs. Tilman's portability application was proper based "under the undisputed facts." *Id*. at 9. Standard further contends Plaintiff cannot rely on allegations that the County was acting as an agent/administrator of Standard when it processed Mrs. Tilman's paperwork (which Plaintiff alleges was "timely") because "Plaintiff fails to provide any factual support or cite any provision in the Group Policy that would support his contention that the County acted as Standard's agent/administrator." *Id*. Standard contends Plaintiff's claim for breach of implied covenant of good faith and fair dealing also fails because Standard "did not breach the terms of the Group Policy as a matter of law." *Id*. at 10-11.

Standard requests that if the Court declines to dismiss Plaintiff's complaint under Rule 12(b)(6), it order Plaintiff to provide a more definite statement under Rule 12(e). *Id*. at 11-12. In particular, it contends it "cannot reasonably prepare a response" without more detailed allegations specifying "1) the date that Ms. Tilman retired from her employment with the County; 2) the dates that Ms. Tilman allegedly submitted any portability forms to the County; and 3) the purported factual basis for Plaintiff's contention that the County acted as an Administrator on behalf of Standard." *Id*. at 12.

### 2. Opposition

Plaintiff rejects Standard's assertion that he has failed to state a claim for breach of contract, citing *Elfstrom v. New York Life Ins. Co.*, 67 Cal. 2d 503 (Cal. 1967) for the proposition that an employer acts as the agent of the insurer when it administers an employer-sponsored group insurance policy. Opposition at 1, 7-8. According to this rule, Plaintiff contends, courts applying California law have held that errors on the part of the employer in carrying out their role as administrators are attributed to the insurer and the insurer is therefore bound by the error. *Id*. (citing *Amberg v. Banker's Life Co*., 3 Cal. 3d 973, 977 (1971); *Ward v. Mgmt. Analysis Co. Employee Disability Ben. Plan*, 135 F.3d 1276 (9th Cir. 1998), *aff'd in part, rev'd in part sub nom*. *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358 (1999)). Here, Plaintiff contends, the allegations in the Complaint and the terms of the Policy support the conclusion that the County was acting as an administrator for and agent of Standard when it processed the paperwork that

Mrs. Tilman timely submitted. *Id*. at 9.

Plaintiff further asserts that the provision in the Policy stating that the employer is not an agent of Standard has no legal effect because the existence of an agency relationship depends on the nature of the relationship between the County and Standard and cannot be determined by stipulation of the parties or contracted around. *Id*. at 9-10 (citing *Ward*, 135 F.3d at 1284; *Amberg*, 3 Cal. 3d at 979; Restatement 3d of Agency § 1.02). Even if the Court does not find as a matter of law that the County was acting as Mrs. Tilman's agent when it processed her portability paperwork, Plaintiff contends, the question of whether an agency relationship exists should not be decided on a Rule 12(b)(6) motion because "[t]he existence of an agency relationship generally presents a question of fact." *Id*. at 10 (quoting *Ward*, 135 F.3d at 1283).

Finally, Plaintiff rejects Standard's argument that he should be required to provide a more definite statement, arguing that the information Standard says it needs to respond to the complaint is already in Standard's possession. *Id.* at 11-12.[4]

### 3. Reply

In its Reply brief, Standard contends "Plaintiff appears to concede" that Mrs. Tilman failed to pay the required premium to qualify for portability and that he fails to explain why Mrs. Tilman allegedly assumed that the premium would be paid by the County, given that the Policy provides that premiums be paid "directly" to Standard. Reply at 2. For this reason alone, Standard argues, Plaintiff's breach of contract claim is defective and "cannot be cured." *Id*. According to Standard, Plaintiff's reliance on *Elfstrom* is a "sideshow about California agency law." *Id*. The real issue, it contends, "is that Plaintiff has failed to allege when Ms. Tilman submitted the

---

[4] In support of his Opposition, Plaintiff offers evidence to show that it is standard practice for the County to submit paperwork to Standard for its employees and in fact, that it submitted paperwork for Mrs. Tilman to Standard under a separate disability policy without incident. He also submits documents relating to Mrs. Tilman's submission of the portability paperwork to the County, as well as a letter from Standard denying Mrs. Tilman's portability request and a letter rejecting Plaintiff's appeal. *See* Cho Decl. (Docket No. 15). Standard objects to Plaintiff's introduction of this evidence, arguing that it may not be considered on a motion to dismiss under Rule 12(b)(6). With limited exceptions, extrinsic evidence may not be considered on a Rule 12(b)(6) motion. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1990). Because the Court does not consider the evidence submitted by Plaintiff, however, it declines to rule on Standard's objection.

application forms and paid the required premiums (which apparently she did not do)." *Id*. at 6. Moreover, "[t]o the extent the County provides general administration for the Group Policy, this does not also mean that the County provided administration for portable life insurance as this issue involves the continuation of life insurance coverage under the portability option." *Id*. at 6-7. The requirement that premiums be paid "directly" to Standard indicates that the County is not involved in the administration of the portability provision, Standard asserts. *Id*.

Standard also rejects Plaintiff's argument that it has adequate information about the underlying facts to respond to Plaintiff's complaint, asserting that the extrinsic evidence offered by Plaintiff in the form of letters from Standard regarding Mrs. Tilman's portability request may not be considered. *Id.* at 7.

## III.   ANALYSIS

### A.   Whether Plaintiff Adequately Alleges Breach of Contract or Breach of Covenant of Good Faith and Fair Dealing

#### 1.   Legal Standard under Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff need not plead a prima facie case in order to survive a motion to dismiss

pursuant to Rule 12(b)(6).  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514-15 (2002); *see also Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) (reaffirming the holding of *Swierkiewicz* in light of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  A complaint must however "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. (quoting *Twombly*, 550 U.S. at 557).  Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### 2. Discussion

The crux of Defendant's challenge to both of Plaintiff's claims is that those claims fail, as a matter of law, because Plaintiff does not allege that Mrs. Tilman *personally* submitted her portability paperwork to Standard and paid the required premium within the 31 day window allowed under the Policy.  Assuming Plaintiff's allegations to be true and drawing all reasonable inferences in favor of Plaintiff, however, Mrs. Tilman completed the required paperwork and timely submitted it to the County, relying on the County to submit the paperwork to Standard and pay the required premium (as it had always done before).  Thus, the question of whether Plaintiff's allegations are sufficient to state a claim for breach of contract (which is also a prerequisite for stating a claim for breach of the covenant of good faith and fair dealing that is implied in a contract) depends on whether the County was acting as Standard's agent when it apparently failed to meet the 31-day deadline for submitting Mrs. Tilman's paperwork to Standard and pay the first premium.  For the reasons stated below, the Court concludes that Plaintiff has sufficiently alleged the existence of an agency relationship for the purposes of surviving a motion on the pleadings.

In *Elfstrom v. New York Life Ins. Co.*, the California Supreme Court addressed the conflict

8

in California case law on the question of "whether an employer acts as the agent of the insurer or of the employees in administering a policy of group insurance." 67 Cal. 2d 503, 512 (1967). The court concluded that "the employer is the agent of the insurer in performing the duties of administering group insurance policies." *Id*. The court explained:

> The most persuasive rationale for adopting the view that the employer acts as the agent of the insurer . . . is that the employee has no knowledge of or control over the employer's actions in handling the policy or its administration. An agency relationship is based upon consent by one person that another shall act in his behalf and be subject to his control. (*Edwards v. Freeman* (1949) 34 Cal.2d 589, 592 [212 P.2d 883].) It is clear from the evidence regarding procedural techniques here that the insurer-employer relationship meets this agency test with regard to the administration of the policy, whereas that between the employer and its employees fails to reflect true agency. The insurer directs the performance of the employer's administrative acts, *and if these duties are not undertaken properly the insurer is in a position to exercise more constricted control over the employer's conduct*.

*Id*. at 513-514 (emphasis added). Based on this rule, California courts have found that an insurance company is "bound by the error" of an employer that administers a group policy issued by the insurance company to cover the employer's employees. *See, e.g., Amberg v. Bankers Life Co.*, 3 Cal. 3d 973, 979 (1971) (holding that under *Elfstrom*, the defendant insurance company was obligated to pay benefit on $40,000 life insurance policy even though decedent technically no longer qualified for that level of coverage at the time he died because employer had failed to update the enrollment information that was supplied to insurance company and did not notify insured that he was no longer eligible for that level of coverage, instead continuing to deduct from insured's paycheck premiums that were calculated based on the $40,000 coverage level).

Here, Plaintiff has alleged specific facts that could support a plausible inference that the County was acting as an administrator with respect to Mrs. Tilman's contractual portability rights and therefore was an agent of Standard under *Elfstrom*. In particular, Plaintiff alleges that Mrs. Tilman delivered her portability paperwork to the County (rather than directly to Standard) because "[w]ith regard to Standard's portability practices, the County of San Mateo directed insureds to deliver claim-related and or portability-related paperwork to the County of San Mateo, as administrators, for submission to Standard." Complaint ¶ 19. Plaintiff further alleges that Mrs.

Tilman "had no knowledge or control over the County of San Mateo's actions in the administration of Standard's policies." *Id*. ¶ 21. The terms of the Policy also support the inference that the County was involved in some aspects of the Policy's administration. *See, e.g.,* Policy, "Life Insurance," Section C(2); "Benefit Payment and Beneficiary Provision," Section (B)(3); "Policyholder Provisions," Section I.

In light of these allegations, the Court rejects Standard's contention that Plaintiff's claims fail as a matter of law because there is no agency relationship. *See McCormick v. Sentinel Life Ins. Co.,* 153 Cal. App. 3d 1030, 1040-41 (1984) (finding that there was a triable issue of fact as to whether employer was an agent, as in *Elfstrom*, where there was evidence that it "performed administrative duties in connection with processing claims," "assumed such responsibilities as mailing the initial claim form to [the plaintiff], notifying [the insurance carrier] of a possible claim from [the plaintiff], and apprising [the plaintiff] his claim was incomplete" and where the plaintiff "had no control over the [employer's] actions"). Rather, that question is more appropriately decided at a later stage of the case when a factual record has been developed.

The Court further rejects Standard's reliance on the Policy provision stating that the employer does not act as its agent when it administers Standard's Policy. *See* Policy, "Policyholder Provisions, Section J. "Ordinarily, an agency relationship may be established through evidence of control and apparent or applied authority, even where the parties have agreed to the contrary." *Ward v. Mgmt. Analysis Co. Employee Disability Ben. Plan*, 135 F.3d 1276, 1284 (9th Cir. 1998), aff'd in part, rev'd in part sub nom. *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358 (1999). Consequently, the provision in the Policy stating that Standard does *not* act as the employer's agent is not dispositive.

The Court also finds unpersuasive Standard's reliance on the requirement under the Policy that the first premium for the individual policy must be paid "directly" to Standard's home office. *See* Policy, "Portability of Insurance," Section A(4). First, the significance of the word "directly" in this provision is not entirely clear. The Court notes that the same term is used for payment of premiums under the group policy, which Plaintiff alleges were always paid by the County and deducted from wages. *See* Policy, "Policyholder Provisions," Section D. Even if this word

10

signifies that payment of the premium required under the Portability of Insurance provision is *not* to be handled by the County, however, the court cannot ignore the actual practices as alleged in the complaint. As Plaintiff has alleged that under Standard's "portability procedures" premiums were taken out of the former employee's retirement benefits, Complaint ¶ 22, a provision in the Policy that is inconsistent with that practice is not sufficient to render Plaintiff's claims insufficient on a Rule 12(b)(6) motion.

Accordingly, the Court rejects Standard's challenges to Plaintiff's claims.

### B.   Whether Plaintiff Should be Required to Provide a More Definite Statement

Rule 12(e) states that a party may move for a more definite statement of a pleading "so vague or ambiguous" that the responding party cannot reasonably prepare a response. Fed. R. Civ. P. 12(e). The motion "must point out the defects complained of and the details desired." *Id*. However, the purpose of a Rule 12(e) motion is to attack unintelligibility, not simply lack of detail. *Velasquez v. HSBC Fin. Corp.*, No. 08-4592 SC, 2009 WL 112919, at *4 (N.D. Cal. Jan. 16, 2009). Thus, where the detail sought is obtainable through discovery, the motion should be denied. *Id.* A Rule 12(e) motion is "proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted and therefore cannot reasonably be expected to frame a proper response." *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 896 (N.D. Cal. 2011).

Standard has not demonstrated that the Complaint is so indefinite that it cannot "reasonably be expected to frame a proper response." To the contrary, the theory of Plaintiff's claims – whether right or wrong – is relatively straightforward. Moreover, to the extent that Standard does not dispute that Mrs. Tillman was insured under the group Policy and that it denied her portability request and a subsequent appeal, the Court finds it safe to assume that Standard is in possession of much of the basic information relating to Plaintiff's claims it contends must be included in an amended complaint. Therefore, it would serve no purpose other than delay to require Plaintiff to file an amended complaint under Rule 12(e).

## IV. CONCLUSION

For the reasons stated above, the Motion is DENIED.

**IT IS SO ORDERED.**

Dated: July 20, 2016

_____
JOSEPH C. SPERO
Chief Magistrate Judge